UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM E. POWELL,

Plaintiff,

v.

INTERNAL REVENUE SERVICE

Defendant.

Civil Action No. 17-278 (JEB)

MEMORANDUM OPINION

Mindful of the oft-quoted advice to uncover a scandal — "follow the money" — *pro se* Plaintiff William E. Powell has been on a long quest to obtain tax information related to his late father and grandfather, their trusts and estates, and two family printing businesses. Suspecting a possible breach of fiduciary duty by the trustees, he has sent countless Privacy Act and Freedom of Information Act requests to Defendant Internal Revenue Service. Although the Service contends that it has released all responsive records to which Plaintiff is entitled, he insists that it is unlawfully withholding documents in violation of the Privacy Act and FOIA. Defendant now moves to dismiss part of Powell's claims and asks for summary judgment on the remainder. Largely agreeing, the Court will grant in part and deny in part the Motion.

I. **Background**

A. Factual Background

Plaintiff's grandfather, Andrew Powell, was a prominent printer "who parlayed a small printing business into one of the first African-American [p]rinting [c]ompanies" in Detroit. See Second Amended Complaint, ¶¶ 61-63. The Court presumes that this was the Andrew Powell Printing Company. Upon his death in 1987, Plaintiff's father — William A. Powell — inherited

1

the business and incorporated it as the Powell Printing Company. Id., ¶¶ 59, 63-65. Plaintiff became an "[a]uthorized [i]ndividual" for the company after his father's death, and he alleges that he is the beneficiary and heir of his father's estate. Id., ¶¶ 44-45. Both father and grandfather additionally had a trust, which lists Powell as a beneficiary. For more than half a decade, Plaintiff has sought tax information on the elder Powells and their entities, believing that the trustees may have breached their fiduciary duty. See Powell v. IRS, 255 F. Supp. 3d 33 (D.D.C. 2017); Powell v. IRS, No. 15-11033, 2016 WL 7473446 (E.D. Mich. Dec. 29, 2016); Powell v. IRS, No. 15-11616, 2016 WL 5539777 (E.D. Mich. Sept. 30, 2016); Powell v. IRS, No. 14-12626, 2015 WL 4617182 (E.D. Mich. July 31, 2015).

As relevant here, in 2013, Plaintiff submitted forms to the IRS requesting the Powell Printing Company's corporate tax returns for 1989-1991. See SAC, ¶¶ 73-79, 104-06. Shortly thereafter, the Service sent him the 1990 and 1991 tax returns as well as a Business Master File Transcript-Complete, which lists all tax returns and documents filed on behalf of the company. See SAC, Exhs. J, K.

In June and September 2017, Plaintiff submitted more Privacy Act and FOIA requests for various tax records for himself, his father and grandfather, the two printing companies, the William A. Powell Estate, the William A. Powell Trust, and the Andrew Powell Trust. See MTD, Exhs. A-H.

B. Procedural History

On February 13, 2017, Plaintiff filed the initial Complaint in this suit, originally seeking relief under a criminal statute and 26 U.S.C. § 6103, which mandates personal-record disclosure. See ECF No. 1. Because neither ground provides for a private right of action, Defendant moved to dismiss. See ECF No. 8. Powell swiftly responded with his First Amended Complaint, which

alleged a Privacy Act violation. See ECF No. 11. On July 3, he moved for leave to file a Second Amended Complaint to add FOIA and Privacy Act claims related to his June requests, which the Court granted. See ECF No. 16; Minute Order of July 20, 2017. On October 23, he again sought supplementation, this time to tack on his September record requests to this suit, and he was again permitted to do so. See ECF No. 26; Minute Order of Oct. 30, 2017. The Court treats these latter two pleadings as supplementing, rather than superseding, the First Amended Complaint, and it will thus consider the allegations in all three as properly pled. The Government has now filed a Motion to Dismiss or for Summary Judgment, asserting that all of his claims fail because the Court lacks jurisdiction to hear them, they are moot, or they are deficient as a matter of law.

## II. Legal Standard

In evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

Under Federal Rule of Civil Procedure 12(b)(1), a plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear his claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). A court also has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's

factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharm. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005); see also Venetian Casino Resort, LLC v. EEOC, 409 F.3d 359, 366 (D.C. Cir. 2005).

Summary judgment, by contrast, may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456-57 (D.C. Cir. 1992).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In FOIA cases, the agency bears the ultimate burden of proof to demonstrate the adequacy of its search and that it properly withheld any documents. See Def. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 91

4

(D.D.C. 2009). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### III. Analysis

For the sake of clarity, the Court divides Plaintiff's requests into two batches: those from his First Amended Complaint, which only alleges a violation of the Privacy Act, and those included in his Second Amended Complaint and Supplemental Complaint, which allege a violation of the Privacy Act and FOIA. The Government has helpfully provided a chart summarizing the requests, see MTD at 2-5, which the Court reproduces below with minor edits.

First Amended Complaint:

| **Individual/Entity** | **Record** |
|---|---|
| Powell Printing Co. | 1990 1120S Corporate Tax Return and attachments; 1991 1120S Corporate Tax Return and attachments; 1992 1120S Corporate Tax Return and attachments; 1993 1120S Corporate Tax Return and attachments; All Powell Printing Co. tax documents with DLN 17953-494-00101-0; Annual Tape Index and Name of Director; Documents related to TEFRA IRS administrative and judicial proceedings; 1992 Address changes with DLN 17963-675-00110-2; 2006 Address changes with DLN 38963-955-77766-6; 2012 Address changes with DLN 17963-731-02171-2. |

5

| | |
|---|---|
| Andrew Powell Printing Co. | 1990-2016 Corporate Tax Returns;<br>All Andrew Powell Printing Co. tax documents with DLN 17953-494-00101-0;<br>Annual Tape Index and Name of Director;<br>Documents related to TEFRA IRS administrative and judicial proceedings. |
| William E. Powell (Plaintiff) | 1990 Powell Printing Co. shareholder K-1;<br>1991 Powell Printing Co. shareholder K-1;<br>1992 Powell Printing Co. shareholder K-1;<br>1993 Powell Printing Co. shareholder K-1;<br>1990-2016 Andrew Powell Printing Co. shareholder K-1s. |
| William A. Powell (Plaintiff's father) | 1990 Powell Printing Co. shareholder K-1<br>1991 Powell Printing Co. shareholder K-1;<br>1992 Powell Printing Co. shareholder K-1;<br>1993 Powell Printing Co. shareholder K-1;<br>1990-2016 Andrew Powell Printing Co. shareholder K-1s. |
| Andrew Powell (Plaintiff's grandfather) | 1990 Powell Printing Co. shareholder K-1<br>1991 Powell Printing Co. shareholder K-1;<br>1992 Powell Printing Co. shareholder K-1;<br>1993 Powell Printing Co. shareholder K-1;<br>1990-2016 Andrew Powell Printing Co. shareholder K-1s. |
| Estate of William A. Powell | 1993 706 Federal Estate Tax Return and attachments |

Second Amended Complaint and Supplement:

| RECORD TYPE | TAXPAYER, TAX YEARS |
|---|---|
| Address changes | Andrew Powell, 1985-2017<br>Andrew Powel Estate, 1987-1999<br>Andrew Powell Trust, 1987-1998<br>Andrew Powell Printing Co., 1987-2017<br>Powell Printing Co., 1987-1994<br>William A. Powell, 1987-2017<br>William A. Powell Estate, 1992-2006<br>William E. Powell, 1987-2017 |
| Foreign Information System transcripts | Andrew Powell, 1987-1996<br>William A. Powell, 1987-1994<br>William E. Powell, 1987-2017 |

| | |
|---|---|
| Non-Master File transcripts | Andrew Powell, 1985-2017<br>Andrew Powel Estate, 1987-1999<br>Andrew Powell Trust, 1992-2006<br>Andrew Powell Printing Co., 1985-2017<br>Powell Printing Co., 1987-1994<br>William A. Powell, 1987-2017<br>William A. Powell Estate, 1992-2006<br>William A. Powell Trust<br>William E. Powell, 1987-2017 |
| Form 1042S Indices | Powell Printing Co., 1987-1994<br>William A. Powell Estate, 1993-1995<br>Andrew Powell Printing Co., 1987-1994 |
| K-1 Information (for William E. Powell) | Andrew Powell Trust, 1987-1998<br>William A. Powell Trust, 1992-2006<br>William A. Powell Estate, 1992-2006 |
| Form 3520 | Estate of William A. Powell, 1993-1994 |
| SUMRY records | William E. Powell, 1995-2017<br>Andrew Powell Printing Co., 1995-2017<br>Andrew Powell Estate, 1987-1999<br>Andrew Powell, 1995-2017 |
| TXMOD transcripts | Powell Printing Co., 1987-1994<br>William A. Powell Estate, 1992-2006<br>William A. Powell Trust, 1992-2006<br>William E. Powell, 1987-2017<br>Andrew Powell, 1987-1994<br>Andrew Powel Estate, 1987-1995<br>Andrew Powell Trust, 1992-2006<br>Andrew Powell Printing Co., 1987-2017 |

Defendant believes that the Court does not have jurisdiction to entertain Plaintiff's requests in the First Amended Complaint and that it is entitled to summary judgment as to those in the Second Amended and Supplemental Complaints. The Court addresses each in turn.

A. First Amended Complaint

Powell's First Amended Complaint asserts a Privacy Act claim for the records in the first chart. The Service, however, contends that it never received any such requests from Plaintiff and thus was under no obligation to search for records.

The Privacy Act provides a cause of action against an agency that refuses to comply with an individual's request for his records. See 5 U.S.C. § 552a(g)(1)(B). Before bringing such a claim in court, however, a plaintiff must submit a "Privacy Act inquiry [that is] clearly marked 'request for notification and access' and 'contain[s] a statement that it is being made under the provisions of' [the statute]." Powell, 255 F. Supp. 3d at 41 (quoting 31 C.F.R. § 1.26 Pt. 1, Subpt. C, App. B(3)(b)(iii)). Failure to do so is cause for dismissal because exhaustion under the Privacy Act is jurisdictional. See Stein v. SEC, 266 F. Supp. 3d 326, 336 (D.D.C. 2017); Powell, 255 F. Supp. 3d at 42 (collecting cases).

The Court finds that dismissal of all but one of the Privacy Act claims in the First Amended Complaint is warranted. While it must accept as true all of the facts set forth there as well as in his Opposition, see Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015), and "detailed factual allegations are not necessary" to survive a motion to dismiss, Powell must nevertheless provide enough facts "to raise a right of relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545-555 (2007).

Even accepting all of Plaintiff's allegations as true, he has not actually pled that he submitted requests for most of the information that he seeks. Although he is *pro se*, Powell is on notice of the Privacy Act's exhaustion requirements as the Court has previously dismissed a case of his for the same reason. See Powell, 255 F. Supp. 3d at 42. Here, he cursorily alleges in the First Amended Complaint that he "mailed a FOIA and PA Request with supporting documents" and Defendant never responded, see Opp. at 4, yet such a conclusory allegation is not enough to avoid dismissal. The only specific requests he mentions in the First Amended Complaint or Opposition are for corporate tax returns for the Powell Printing Company for 1989-1991. See FAC, ¶¶ 73-79, 104-106. True, his prayer for relief in that filing asks that the Court order the

IRS to produce other documents, but it contains no allegation that he ever submitted a request for them. He concedes, moreover, that he received the tax returns for 1990 and 1991, id., ¶¶ 118-19, rendering those claims moot. For the 1989 tax return, Plaintiff alleges that he requested it but did not ask for this document to be produced in his prayer for relief. See FAC, ¶¶ 258- 308. The Court nonetheless will not dismiss the claim resting on that document because of such technicality. See Doe v. Dep't of Justice, 753 F.2d 1092, 1104 (D.C. Cir. 1985) (district court should not dismiss "for failure to seek the technically appropriate remedy when the availability of some relief is readily apparent on the face of the complaint").

Plaintiff should be aware, however, that his factual allegations alone will not be enough if the case proceeds to the summary-judgment stage; he will, rather, be required to show a "genuine dispute as to the agency's receipt of the . . . request in light of the agency's declaration that it had no record of receiving the request." Pinson v. Dep't of Justice, 69 F. Supp. 3d 108, 115 (D.D.C. 2014). In sum, the only item of the First Amended Complaint to survive is the alleged request for the 1989 return for the Powell Printing Company.

B. Second Amended and Supplemental Complaints

The second group of records comprises various tax information for Andrew Powell, the Andrew Powell Estate, the Andrew Powell Trust, the Andrew Powell Printing Company, the Powell Printing Company, William A. Powell, the William A. Powell Estate, the William A. Powell Trust, and Plaintiff himself (William E. Powell). The Court first notes that the Service properly construed the request under FOIA, as it would yield Plaintiff the same or greater access to the records sought. See MTD at 11 n.4 (citing Murray v. Shulkin, 273 F. Supp. 3d 87, 93 (D.D.C. 2017)); see also Thompson v. Dep't of Justice, 146 F. Supp. 3d 72, 82 (D.D.C. 2015) (adequacy of search for FOIA and Privacy Act analyzed under same standard when searches

would be coextensive); Whitaker v. CIA, 31 F. Supp. 3d 23, 47-48 (D.D.C. 2014) (relatives may not exercise Privacy Act rights on behalf of deceased individuals). Defendant contends that it released all responsive records to which Powell was entitled. The Court, then, must determine first whether Plaintiff was authorized to receive the documents he requested and, if so, whether the Government's search was adequate.

1. *Authorized Access*

For good reason, not just anyone can obtain the tax information of another person or corporation. See Elec. Priv. Info. Ctr. v. IRS, 261 F. Supp. 3d 1, 6 (D.D.C. 2017) (dismissing FOIA request for president's tax returns). Tax returns and accompanying information are "confidential" and can only be disclosed to those authorized by statute and regulation. See 26 U.S.C. §§ 6103(a), (e). Before the Service can release an individual's tax information, the requester must "establish [his] identity and right to access such records" by "provid[ing] adequate proof of the legal relationship under which [he] assert[s] the right to access the requested records." 26 C.F.R. § 601.702(c)(5)(iii)(B). Until the requester does so, the IRS "is not obligated to process the request," and if he "nonetheless files suit, []he is said to have failed to exhaust [his] administrative remedies." Kalu v. IRS, 2015 WL 4077756, at *4 (D.D.C. July 1, 2015). A plaintiff bears the burden of showing entitlement to records. Goldstein v. IRS, 279 F. Supp. 3d 170, 180 (D.D.C. 2017).

Powell submitted copies of the death certificates of his father and grandfather, the William A. Powell Trust, the Andrew Powell Trust, and his own social security card. See SAC, ¶¶ 193-95; Def. Statement of Undisputed Material Facts, ¶ 16. The Service does not dispute that this information is sufficient for Plaintiff to obtain the records of himself, his father, the Powell Printing Company, the William A. Powell Estate, the William A. Powell Trust, and the Andrew

Powell Trust, but it contests that the submitted documents establish that he is authorized to receive records pertaining to Andrew Powell, the Andrew Powell Printing Company, or the Andrew Powell Estate. The Court agrees.

First, when seeking tax records for a deceased individual or an estate, a requester must show that he is the "administrator, executor, or trustee of [the] estate" or an "heir at law, next of kin, or beneficiary under the will, of such decedent." 26 U.S.C. §§ 6103(e)(1)(E) (i)-(ii). None of Plaintiff's submitted documents establishes such a relationship. Unlike the William A. Powell Trust, which explicitly states that Plaintiff is entitled to 35% "of the <u>trust property and estate</u>," SAC, Exh. W4, the Andrew Powell Trust agreement states that Plaintiff is entitled only to a part of the <u>trust</u>. <u>Id.</u>, Exh. W9 (Andrew Powell Trust Agreement) at 5 (stating that upon William A. Powell's death, corpus of the trust "shall be divided into as many equal shares as William shall leave then living children and deceased children leaving then living issue"). Trusts and estates are different legal entities, and Powell's rights under the trust do not automatically make him a beneficiary of the estate <u>under the will</u>, as required by statute.

As to the Andrew Powell Printing Company, Plaintiff must show that he is: 1) "designated [for access] by resolution of its board of directors"; 2) "an officer or employee" who has been designated access by a "principal officer and attested to by the secretary or other officer"; 3) a "bona fide shareholder of record owning 1 percent or more of the outstanding stock of such corporation"; 4) for an S corporation, that he was "a shareholder during any part of the period covered by such return during which an election . . . was in effect"; or 5) for dissolved corporations, that he has been "authorized by applicable [s]tate law to act for the corporation" or found by the Secretary "to have a material interest which will be affected by" the information. <u>See</u> 26 U.S.C. § 6103(e)(1)(D).

Powell does not allege that he submitted any of the forms of proof required by statute. He, instead, states that his records list him as a "Member/Shareholder of the Parent Company ('Andrew Powell Printing Company'), subsidiaries and other business entities." FAC, ¶¶ 244-46. The Court has reviewed this document and is unable to locate such an indication. Even if that information did appear on the transcript, it would still not satisfy the requirements for disclosure because he must show that, as a shareholder, he owns more than 1% of the outstanding stock or that (if an S corporation) he was a shareholder during the relevant period. See 26 U.S.C. §§ 6103(e)(1)(D)(iii), (iv). Plaintiff also contends that the company "would have Members and the Andrew Powell Printing Company would have to provide an accurate accounting of the LLC's ownership and each Member's distributive share of profits and losses on state and federal tax returns." Opp. at 7. Construed generously, the Court takes Plaintiff's argument to be that the IRS would be able to see whether he meets the criteria for disclosure because it could look at the returns and determine how much of a share Powell inherited through his father. Even if that were true, Powell, not the Service, bears the burden of establishing access to records. See Goldstein, 279 F. Supp. 3d at 180. To the extent, moreover, that he attempts to argue that as a shareholder of Powell Printing Company he is also a shareholder of the Andrew Powell Printing Company and thus entitled to access, Plaintiff has not established that these two companies are the same legal entities such that being a shareholder of one would mean he was a shareholder of the other. The Court thus agrees with the Government that Powell has only established authorization to obtain tax information for the Powell Printing Company, William A. Powell, the William A. Powell Trust, the William A. Powell Estate, the Andrew Powell Trust, and himself. The appropriateness of Defendant's search, therefore, will be limited to those entities and individuals.

### 2. *Adequacy of the Search*

Powell next challenges the Service's search for several categories of his requested records. "An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Id. To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). The affidavits or declarations should "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. See Perry, 684 F.2d at 127. "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542.

The Government supported its Motion here with the Declaration of William White, a Government Information Specialist in the IRS Office of Privacy, Government Liaison and Disclosure. See MTD, Exh. 10, ¶ 1. Based on this affidavit, Defendant contends that it has

performed an adequate search and released all responsive records. The Court looks at each record type in turn.

### a. Address Changes

Powell requested all address changes for himself, his father, his grandfather, their respective estates, the Andrew Powell Trust, the Andrew Powell Printing Company, and the Powell Printing Company for several years beginning in 1987. In response, the IRS used an application called Information Data Retrieval System (IDRS), which "store[s] much of the data associated with taxpayer accounts," and entered the relevant taxpayer identification number "to search for address updates." White Decl., ¶¶ 10, 12. Defendant avers that this search "retrieves all current and prior addresses saved in the Master File," and IDRS is the only "IRS system in which the address changes requested by Mr. Powell are likely to be located." Id., ¶¶ 13, 16. It then released to Plaintiff the "transcripts of the addresses associated with the taxpayer identification numbers for Andrew Powell, the Andrew Powell Estate, the Andrew Powell Printing Company, the Andrew Powell Trust, the Powell Printing Company, the William A. Powell Estate, and William E. Powell." Id., ¶ 15; see also Opp., Exh. A. It did not find any responsive records for Plaintiff's father. See White Decl., ¶ 16.

Powell does not challenge the Government's description of the relevant systems or suggest that the search was inadequate; rather, he only asserts that it "did not provide" the address changes for all of the requested dates. See Opp. at 4. The law in this Circuit is clear, however, that "the failure of an agency to turn up" specific records "does not alone render a search inadequate." Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003). The "adequacy of a FOIA search is generally determined not by the fruits of the search, but by

the appropriateness of the methods used to carry out the search." Id. The Service's described search was reasonably tailored to produce all address changes in the system.

### b. Foreign Information System Transcripts

Plaintiff also requested the Foreign Information System (Transcript/Tax Return) for various years for himself and his father. According to the IRS, the FIS "is a computer system that was used to track data" submitted by foreign-owned corporations on Form 5472. See White Decl., ¶ 18. The system was replaced by a new electronic one in 2007 — before corporations filed tax returns for that year — meaning there would be no records for any corporation after 2006. As to years prior to that, the Government avers that "to the extent they ever existed," it is unable to search for such records because they are "no longer accessible." Id., ¶ 22. Powell balks at the suggestion that "no one within one of the largest collection agencies ('IRS') in the world does not have any form of computer support or technology information ('IT') support to advise Defendant of how to retrieve information from an obsolete system." Opp. at 12. He asserts that there should be a "hard copy, microfilm, microfiche, or other electronic media forms" available to access the requested documents. Id. "[P]urely speculative claims about the . . . discoverability of other documents," however, is insufficient to overcome the "good faith presumption" accorded agency affidavits in FOIA cases. See Bloeser v. Dep't of Justice, 811 F. Supp. 2d 316, 320 (D.D.C. 2011) (quoting Brown v. Dep't of Justice, 742 F. Supp. 2d 126, 130 (D.D.C. 2010)). The Court further notes that, to the extent what Powell desires is Form 5472 — which is used by corporations with 25% or more foreign ownership — if any existed, they would be appended to an individual tax return. See White Decl., ¶ 22 n.3. His request for the FIS transcript, see MTD, Exh. C, however, is only available in the now-defunct FIS.

### c. Non-Master File Transcripts

Plaintiff also requested official and automated Non-Master File (NMF) transcripts for several years for himself as well as the Andrew Powell Trust, the Powell Printing Company, William A. Powell, the William A. Powell Estate, and the William A. Powell Trust. See MTD, Exh. E. The IRS has two types of tax filing accounts: Master File (MF) and NMF. The MF includes the individual, business, and employee-plans master files as well as any individual-retirement-account file. "In addition to" those files, "there is also NMF," which is "used to control returns or entities that are not available from the Master File." Internal Revenue Manual § 4.71.2(5). "NMF accounts are not posted on Master File" and are located "on the A[utomated]NMF system." Id. §§ (5)-(6). To search for Plaintiff's requested files, the IRS input the relevant taxpayer identification number, transcript type, and relevant time periods, but retrieved no responsive records. See White Decl., ¶¶ 28, 32. Plaintiff, again, does not dispute the adequacy of this search but instead argues that Defendant should have searched for Individual Master File transcripts and Business Master File Transcripts. The Internal Revenue Manual is clear, however, that those transcripts would not appear on an NMF. The Court is satisfied that the Service's NMF search was adequate.

### d. Form 1042S Indices

The IRS also searched for Form 1042S Indices for the Powell Printing Company and the William A. Powell Estate as per Plaintiff's June 12 request. To do so, it searched the Master File System in IDRS for the specific MFT code that corresponds to whether the taxpayer filed a 1042-S. See White Decl., ¶ 36. That code was not present on the transcripts for either the Powell Printing Company or the William A. Powell Estate. Id., ¶ 39. Powell only challenges this search to the extent it did not include records for the Andrew Powell Printing Company, but,

as discussed above, he has not shown that he is entitled to those records. The IRS, therefore, had no obligation to search for them.

### e. K-1

Powell also requested K-1 information, which form is used to report taxable events from entities including an estate or trust, for himself from several of the entities stretching back to 1987. According to the Service, this information "would show up on Mr. Powell's transcripts" in IDRS if it exists, but that system only retains information returns (mandatory tax documents that businesses use to notify the IRS of reportable transactions) for ten years. See White Decl., ¶¶ 41-42. Because the latest date for which Powell requested K-1 information was 2006, any records from the trust or estate would have been purged from IDRS in 2016 — one year before he submitted his request.

Next, the Service manually searched Plaintiff's transcripts for the requested years "in case he perhaps had attached his Forms K-1 to his own returns." Id., ¶ 43. It then sent a request to its long-term storage facility to locate any responsive files. Id., ¶ 45. Personal tax returns, however, are destroyed after seven years. Id., ¶ 46. In other words, if Plaintiff had a 2006 tax return, it would have been filed in 2007 and destroyed in 2014. Finally, Defendant "checked to see if the Andrew Powell Trust had filed a Form 1041," which would have had K-1 information attached, if applicable. Id., ¶ 47. The Trust only filed a Form 1041 for 1996, but the IRS does not have a record of it because it would have been destroyed around 2003. Id., ¶ 48. After realizing it did not search for K-1s from the William A. Powell Trust and the William A. Powell Estate, the Service conducted a supplemental search using the same method described above and did not locate any responsive records. See Reply, Attach. 1 (Supplemental Declaration of William White), ¶¶ 4-10.

17

Plaintiff attempts to undercut this seemingly thorough search with two arguments. First, he claims that he "requested the K-1s for William A. Powell, William E. Powell, and Andrew Powell for the Powell Printing Company for the years of 1990 through 1993." Opp. at 15. The only evidence in the record regarding K-1 requests are those reported by the William A. Powell Trust (1992-2006), the William A. Powell Estate (1992-2006), and the Andrew Powell Trust (1987-1998) for which Plaintiff was the beneficiary. See MTD, Exh. B at 3. He has not provided any proof, therefore, that he requested K-1s for his father or grandfather, or for himself from 1990-1991 related to the William A. Powell Trust and Estate. As Defendant seeks summary judgment on the claims at issue here, Powell must show some "genuine dispute as to the agency's receipt of the . . . request in light of the agency's declaration that it had no record of receiving the request." Pinson, 69 F. Supp. 3d at 115. He has not done so. In any event, even if he had, these records would likely have been destroyed pursuant to the aforementioned retention policies. The Service averred, furthermore, that it searched for his K-1 information as it related to the William A. Powell Trust, the William A. Powell Estate, and the Andrew Powell Trust for the requested years. See White Decl., ¶¶ 41-49; Suppl. White Decl., ¶¶ 2-8. As described above, however, the requested records "no longer exist because [Plaintiff] is seeking information return data from prior to 10 years ago." White Decl., ¶ 49; see also, Suppl. White Decl., ¶¶ 4-7.

Powell next argues that the IRS should have been able to locate Form 706, a one-time submission by the executor of an estate to determine the estate tax, for the William A. Powell Estate because such forms are retained for 75 years. The Service avers that "searched for the Form 706 in 2015 as part of a court proceeding in Michigan and [was] unable to locate it." Supp. White Decl., ¶ 9. Such a cursory explanation is not a "reasonably detailed" description of the search because it does not "set[] forth the search terms and the type of search performed."

18

Oglesby, 920 F.2d at 68. Although the IRS alleges that it has a copy of the Estate Form 706, Powell seeks the original, which he says may have K-1 information attached. The Court is, accordingly, unable to grant the Government summary judgment on this score. It may renew its Motion with another supplemental declaration describing the search terms and type of search performed for the original Form 706 for the William A. Powell Estate.

## IV. Conclusion

For the reasons stated above, the Court will largely grant Defendant's Motion. With the exception of the request for the Powell Printing Company's 1989 tax return, the claims in Plaintiff's First Amended Complaint will be dismissed for failure to exhaust. The Court will also grant the Government summary judgment on the claims in the Second Amended and Supplemental Complaints, apart from the adequacy of the search for Plaintiff's K-1 information as it relates to Form 706 from the William A. Powell Estate. A separate Order consistent with this Opinion will be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 5, 2018