UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM E. POWELL,

    Plaintiff,

    v.

INTERNAL REVENUE SERVICE,

    Defendant.

Civil Action No. 17-278 (JEB)

## MEMORANDUM OPINION

*Pro se* Plaintiff William E. Powell's long pursuit of tax information about his family, their trusts and estates, and their printing business has spurred him to bring at least six suits against Defendant Internal Revenue Service — three in the Eastern District of Michigan and three here. In the instant case, Plaintiff alleges that the IRS's response, or lack thereof, to several records requests constitutes a violation of the Privacy Act and the Freedom of Information Act. Only three claims remain after the Court's first summary-judgment Opinion, and the Government now moves for judgment on them. The Court accedes and will grant the Motion.

**I.    Background**

The full history of this case is laid out in the Court's prior Opinion. See Powell v. IRS, 317 F. Supp. 3d 266, 270–71 (D.D.C. 2018). As relevant here, Plaintiff's First Amended, Second Amended, and Supplemental Complaints alleged Privacy Act and FOIA violations relating to his requests for tax records pertaining to himself (William E. Powell), his father (William A. Powell), his grandfather (Andrew Powell), the family's printing company under two names (recently, the Powell Printing Company; formerly, the Andrew Powell Printing

Company), his father's estate, his father's trust, and his grandfather's trust. Id. at 273–74 (listing requests in each Complaint by taxpayer).

On July 5, 2018, this Court granted the IRS summary judgment as to all but two matters. First, it found that Plaintiff had sufficiently pleaded a request for the Powell Printing Company's 1989 tax records. Id. at 275. The second claim to survive was Powell's allegation that the IRS had not adequately searched for the original of his father's Form 706, which he seeks as a way of locating Plaintiff's own K-1 information, which may have been attached to the Form 706. Id. at 280–81. Upon Plaintiff's Motion for Reconsideration, the Court ordered that Powell was also entitled to receive the tax records he had requested for Andrew Powell as an individual, since he had "sufficiently established he is next of kin to his grandfather." ECF No. 63 (Order Granting in Part and Denying in Part Plaintiff's Motion for Reconsideration) at 2.

The IRS has now filed a Second Motion for Summary Judgment, asserting first that Powell is barred by claim preclusion as to the 1989 Powell Printing Company tax records and, second, that it has adequately searched for both the William A. Powell Estate's Form 706 and the requested individual tax records of Plaintiff's grandfather, Andrew Powell.

## II.     Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See

Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456–57 (D.C. Cir. 1992).

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); see Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In FOIA cases, the agency bears the ultimate burden of proof to demonstrate the adequacy of its search and that it properly withheld any documents. See Defenders of Wildlife, 623 F. Supp. 2d at 88, 91. The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

**III. Analysis**

As there are three separate sets of records at issue here, the Court looks at each in turn.

A. Powell Printing Company 1989 Return

The first surviving claim is one under the Privacy Act for the 1989 corporate tax return of the Powell Printing Company. See Powell, 317 F. Supp. 3d at 275. Defendant now argues, as it

3

did in its Answer, that this claim is barred by the doctrine of claim preclusion, its having been adjudicated by the U.S. District Court for the Eastern District of Michigan in Powell v. IRS, No. 14-12626, 2015 WL 5271943 (E.D. Mich. Sept. 9, 2015).

"A subsequent lawsuit is barred by claim preclusion 'if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction.'" Nat. Res. Def. Council v. EPA, 513 F.3d 257, 260 (D.C. Cir. 2008) (quoting Smalls v. United States, 471 F.3d 186, 192 (D.C. Cir. 2006)). As to the first element, "[w]hether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'" Drake v. FAA, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting Page v. United States, 729 F.2d 818, 820 (D.C. Cir. 1984)). Plaintiff appears to contest only the fourth element of this test, arguing that the court in the prior case lacked jurisdiction and venue.

The court in the Michigan case held its order for summary judgment in abeyance pending the Government's making three further showings, one of which related to its "search for the 1989 Corporate Tax Return for the Powell Printing Company." Powell, 2015 WL 5271943, at *2. In response, the IRS submitted a supplemental declaration by disclosure specialist Lisa M. Soli detailing its 2015 search for the 1989 return, which declaration Defendant has also appended to its Reply in the present case. See ECF No. 81, Exh. A. The district court in that case found that the IRS had provided evidence of a "good faith search" demonstrating that it "d[id] not possess [the] requested document." Powell, 2015 WL 5271943, at *2.

The elements of claim preclusion are thus easily met here. First, the two cases unquestionably concern the same "nucleus of facts," Drake, 291 F.3d at 66 (quoting Page, 729 F.2d at 820), because both address Plaintiff's request for the Powell Printing Company's 1989

4

corporate tax return.  Second, the parties are the same — namely, William E. Powell and the Internal Revenue Service.  Third, the Michigan court considered Powell's claim for the 1989 return on the merits, dismissing the case with prejudice after finding that the Government had conducted an adequate search.  The only question as to that judgment's validity would arise if the Michigan court had somehow lacked subject-matter jurisdiction over that claim.  See, e.g., Bell Helicopter Textron, Inc. v. Islamic Republic of Iran, 734 F.3d 1175, 1180–81 (D.C. Cir. 2013) ("[J]udgments in excess of subject-matter jurisdiction 'are not voidable, but simply void.'") (quoting Elliott v. Peirsol's Lessee, 26 U.S. (1 Pet.) 328, 340 (1828)).  But, of course, any FOIA claim would give that court federal-question jurisdiction.  As the prior decision thus meets all four elements of claim preclusion, the Court will grant Defendant's Motion for Summary Judgment as to the 1989 return.

      B.  William E. Powell K-1 Information and William A. Powell Estate Form 706

The next allegation to survive the prior summary-judgment decision is Powell's contention that, as a means of trying to find his individual K-1 information, the IRS should have searched for his father's estate's original Form 706, which may have had attached to it his own K-1 information.  Form K-1 is used to report taxable events from entities including trusts and estates.

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"  Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents

was adequate." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The adequacy of an agency's search for documents requested under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Id. To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). The affidavits or declarations should "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. See Perry, 684 F.2d at 127. "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542.

In its first motion for summary judgment, the IRS established that the system in which it stores K-1 information, the Information Data Retrieval System (IDRS), would have purged the requested records by the time Powell had requested them. See Powell, 317 F. Supp. 3d at 280. The IRS also attempted to obtain Plaintiff's personal tax return, to which his K-1 information may have been attached, but that, too, would have already been destroyed for all requested years pursuant to the IRS's retention policy. Id. Finally, the Service looked to see if Powell had filed a Form 1041, which would also have had K-1 information attached to it, but, although the system showed a single Form 1041 had been filed in 1996, that form also would have been destroyed by the time of the request. Id.

The Opinion, however, discussed one remaining means of finding the K-1 information, which the Service did not yet sufficiently explain in its earlier motion. Form 706, a one-time submission by the executor to determine the contents of an estate, may have attached to it

6

Plaintiff's K-1 information for that estate, in this case for the William A. Powell Estate. The Court found insufficient both the IRS's "cursory" statement that it had been unable to locate the Form 706 in an earlier court proceeding in Michigan and its proffer of a copy of Form 706, which would not have the attachments its original did. Id. at 280–81. Form 706 is retained by the IRS for 75 years, moreover, so there was no contention that it was destroyed prior to Plaintiff's request. Id.

In its Second Motion for Summary Judgment, Defendant now describes in great detail the process by which it searched for the Form 706 in 2015 pursuant to an Order issued by the U.S. District Court for the Eastern District of Michigan in Powell v. IRS, No. 14-12626, 2015 WL 4617182 (E.D. Mich. July 31, 2015). It supports these statements with the Declaration of Joy E. Gerdy Zogby, an attorney in the IRS Office of Chief Counsel in the Office of the Associate Chief Counsel, who oversaw that search in 2015 and again in 2019. See ECF 78 (Def. Second MSJ), Exh. 4, ¶¶ 1, 7, 10–11. Based on this affidavit, the Service asserts that it has shown the adequacy of its search for the Form 706 associated with the William A. Powell Estate. The Court agrees, finding that the IRS's updated explanation shows that its search for the Form 706 was adequate and thus that summary judgment should be granted as to this claim.

More specifically, Gerdy Zogby states that, in 2015, the IRS found a Document Locator Number (DLN) for a tax return that appeared to be the William A. Powell Estate Form 706. Id., ¶¶ 14–17. Consistent with Internal Revenue Manual § 3.5.61.16.2, which states that a "Special Search" should be performed for FOIA requests, id., it then sent a records request for that DLN to a Special Search Unit (SSU) in Cincinnati, which subsequently requested the Form 706 from the Federal Records Center (FRC). Id., ¶¶ 17–19. The FRC did not find the Form in the expected location but identified another possible DLN, which was listed as being checked out to

7

Estate and Gift Team 101, located in Covington, Kentucky. Id., ¶¶ 20–21. Gerdy Zogby's subsequent conversations with that team and with the other teams suggested by Team 101 did not turn up the Form. Id., ¶¶ 22–25. In response to the current lawsuit, Gerdy Zogby called the Special Search Unit in 2019 to again inquire as to the Form 706. Id., ¶ 32. A different team at the SSU suggested another possible DLN, a subsequent search for which only repeated the same fruitless referral to Estate and Gift Team 101. Id., ¶¶ 35–37. Gerdy Zogby thus now avers that she "do[es] not know where else to look for the original Form 706." Id., ¶ 38.

In response, Plaintiff argues that Defendant did not address a specific DLN number with respect to the search for Form 706. He further notes that Defendant refunded his request fees without explanation of why it had not processed the requests. He also complains that the IRS should have filed an affidavit from the FRC with more detailed information about their receipt and later loan of the Form. Finally, Plaintiff contends that Defendant should have used various other systems to search for the Form, including the Archives and Records Centers Information System (ARCIS) and the Automatic Processing (ADP) System. In reply, Defendant notes that ARCIS is a National Archives record system rather than an IRS system.

The Court is now satisfied that the Service's search for the requested K-1 information, including its search for the William A. Powell Estate Form 706, was "reasonably calculated to uncover all responsive documents." Truitt, 897 F.2d at 542. Rather than its former bare assertion that it had searched for the Form 706 in a prior proceeding, the Service has now demonstrated in great detail the steps it took to attempt to locate this record. Powell's argument that it should have used alternative systems, including one belonging to the National Archives, does not defeat the adequacy of the Government's search. Powell has offered no contrary evidence to cast doubt on the Government's declarations, and his statement that the IRS did not

8

mention a specific DLN in its briefing does not establish that its search was not reasonably calculated to produce responsive documents, especially since Defendant has stated that the DLN Powell provided in his request was not the correct one. See Gerdy Zogby Decl., ¶¶ 32–34.

The Court thus finds that Defendant has met its burden on the issue of Plaintiff's K-1 information, including the Form 706 for the William A. Powell Estate.

C. Andrew Powell Records

Plaintiff appears to concede the Government's arguments as to the individual tax records of Andrew Powell, making no mention of them in his Opposition. The Court finds, moreover, that the IRS has now shown, through its submission of the declaration of IRS Government Information Specialist Delphine Thomas, see ECF 78 (Def. Second MSJ), Exh. 5, that it performed searches reasonably calculated to locate responsive documents for each of the four requests as to Andrew Powell. The Court analyzes the four in turn.

1. *Address Changes*

As relevant here, Powell requested all address changes for his grandfather, Andrew Powell, between 1985 and 2017. In response, the IRS used IDRS, which Thomas states is used by "[d]isclosure employees like [her] . . . to search for records in response to FOIA requests like Mr. Powell's." Id., ¶ 6. To search for an address change, which would "appear on an individual's Master File under [transaction code] 014," Thomas entered Andrew Powell's taxpayer identification number (in this case, his social security number) "into IDRS to search for address updates in the various IDRS modules and accounts." Id., ¶ 8. She states that she searched IDRS for Andrew Powell's address changes using this method and "did not locate any responsive records." Id., ¶ 9. She further avers that "there is no other IRS system in which the address changes requested by Mr. Powell are likely to be located." Id.

9

The Court finds that the Service's described search was reasonably tailored to produce all address changes for Andrew Powell. The IRS appears to have used all appropriate methods for locating address changes, which is the determinative factor when considering the adequacy of a FOIA search, notwithstanding the fact that no records were recovered. See Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003).

2. *Foreign Information System Transcripts*

Powell also requested Foreign Information System (FIS) transcripts for Andrew Powell between 1987 and 1996. As noted in the first summary-judgment Opinion in this case, the FIS was a computer system containing data from filings by foreign-owned corporations. See Powell, 317 F. Supp. 3d at 279; Thomas Decl., ¶¶ 11–12. It was replaced by an electronic filing system in 2007, and the FIS has since been shut down. See Thomas Decl., ¶ 13. Thomas states that she has "been unable to locate anyone at the IRS who knows any way to revive the now-defunct [FIS] in order to retrieve the requested transcripts." Id., ¶ 14. In addition, she notes that the FIS was used to track forms related to corporations, not individuals, and thus it is unlikely that FIS records for Andrew Powell ever existed in the first place. Id., ¶ 11 n.1.

The Court accords to the Service a good-faith presumption as to its statements that the FIS records are now inaccessible and thus finds that it has discharged its duty under FOIA as to the request for Andrew Powell FIS records.

3. *Non-Master File Transcripts*

Powell also requested Non-Master File (NMF) Transcripts for Andrew Powell between 1985 to 2017. While a taxpayer's Master File holds all major categories of taxpayer data, see Internal Revenue Manual § 21.2.1.2, some taxpayers may also have an NMF, which contains records of "certain types of tax assessments that cannot be implemented by Master File

processing." Id. § 21.2.1.5(1); see also Thomas Decl., ¶ 17 ("Most taxpayers do not have NMF transcripts associated with their accounts . . . ."). The IRS houses NMF files in the Automated Non-Master File (ANMF) System, a search of which can determine whether an NMF file exists for a given taxpayer. See Internal Revenue Manual § 21.7.12.2; Thomas Decl., ¶¶ 18–19. Thomas states that "there is no other system [than the ANMF] in which the NMF transcripts requested by Mr. Powell are likely to be located." Thomas Decl., ¶ 22. The Service performed a search in the ANMF system using Andrew Powell's taxpayer identification number (his social security number) and received no results, thus indicating that there is no NMF file relating to him. Id., ¶¶ 20–22. This is sufficient.

    4. *SUMRY and TXMOD Transcripts*

Last, Powell requested SUMRY records for Andrew Powell between 1995 and 2017 and TXMOD records for him between 1985 and 2017. Both SUMRY and TXMOD are command codes used in IDRS. Id., ¶¶ 24, 28. According to Thomas, entering the code "SUMRY" into IDRS "retrieves a summary of all active modules available on a particular taxpayer's account," id., ¶ 24, and entering the code "TXMOD" into IDRS "retrieves a display of tax information for a specific Master File module for a specific period." Id., ¶ 28. Both codes "reflect[] recent changes to accounts," id., ¶¶ 24, 28, and therefore are unlikely to produce results for older or inactive cases. Id. Thomas performed both a SUMRY and a TXMOD search in IDRS for Andrew Powell on July 1, 2019, and neither yielded responsive records. Id. In both cases, Thomas states that there are no other IRS systems where the "records requested by Mr. Powell are likely to be located." Id., ¶¶ 26, 30.

The Court thus finds that both of these searches were reasonably calculated to produce responsive records and that the IRS has discharged its burden on these records as well.

## IV. Conclusion

For the reasons stated above, the Court will grant Defendant's Second Motion for Summary Judgment, thus terminating this case. A separate Order consistent with this Opinion will be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: September 6, 2019